## ANNA ISABEL JOHNSTON et al., Appellants, v. DANIEL JOHNSTON et al.

### Division One, March 18, 1903.

1. **Administration:** UNNECESSARY. No administration is necessary where intestate left no debts.

2. **Estate by Entirety:** EVIDENCE. A husband can not show by a note and deed of trust given to himself and wife jointly that the money for which they were given was his individual money, and so made by him in order to create an estate by the entirety with survivorship. On the contrary, the presumption is that the money called for by such note was in part her individual property.

3. **Gift to wife:** SEPARATE ESTATE. Where no rights of creditors are involved, a gift by a husband of money to his wife, which in part became the consideration for a note and deed of trust given to her and him jointly by her mother, is as much the wife's separate estate as if she had received it as a gift from a stranger or had inherited it.

4. **Note to Wife and Husband:** PHYSICAL FACTS. A husband made out and presented to his mother-in-law an itemized statement, for rents and money loaned and advanced, $2,206.08, and to this statement appended these words: "Money advanced by my wife Mary Ann, $1,800; total amount due me and Mary Ann, $4,006.08," and this

statement was signed by both the husband and his wife, and the mother-in-law gave a note payable to both as payees,.two years after date, and gave a deed of trust which mentioned both as beneficiaries. The deed of trust was not foreclosed during the wife's life, although it had been due for two years. Then it was foreclosed and the land bought in by him for $5,000 and all the bid credited on the note except $85. *Held*, that the physical facts, aside from his admissions in' another suit that the money. was his wife's, all point convincingly to the conclusion that the $1,800 was the wife's money, and not his.

5. **Estates by Entirety:** PERSONAL PROPERTY. Estates by the entirety may be created in Missouri, in personal as well as real property, and as between ·husband and wife the joint tenancy in order to be held to be an estate by the entirety need not' be expressly declared to be such by the terms of the instrument creating it, except as to their .separate personal property; as to that the common law has been changed by the Married Woman's Acts, which have abolished the unity of husband and wife and placed the· husband and wife on the same footing in this regard. as other persons.

6. ————: ————: JOINT NOTE. An. estate by the entirety does not arise, nor does the right of survivorship exist, as to real estate where the land is purchased, without the wife's written consent, partly with her money and partly with the money of the husband, but the wife, and after her death her heirs, will be decreed a resulting trust in the land by a court of equity in the proportion that her money bears to the total purchase price of the land. And the same rule applies where the wife's separate money is invested in personal property. Nor can the husband create a right of survivorship in himself by investing their separate money in their joint names, without her express written consent.

7. ————: ————: ————: FORECLOSURE. The right of survivorship does not obtain in the husband, where he and his wife contributed a part of their money that made up the consideration of a note, which named both as payee, and which was secured by a deed of trust which named both as beneficiaries; but if, after her death, the husband buys in the property at the trustee's sale and has his bid credited on the joint note, a court of equity will decree to her heirs' such a proportion of the land as the amount contributed by her bears to the whole consideration of the note.

8. **Witness:** DECEASE OF ONE PARTY TO CONTRACT: WAIVER. · The maker and one of the joint payees of a note were dead. *Held*, that the other payee was an incompetent witness in his own behalf to show that the money which went to make up ·the consideration of the note was wholly his. *Held*, also, that by cross-examination of him only as to matters covered by his examination in chief, the opposite parties did not waive their right to object to his testifying.

9. **Parties to Action:** RESULTING TRUST: JOINT NOTE: CONVERSION. A suit to establish a resulting trust should be prosecuted by the heirs and not by the administrator of the party whose money bought the interest in the land. And if a husband and wife furnish the money which made up the consideration of a note and after her death the husband bought at the trustee's sale the land which secured the payment thereof, and had the amount of his bid credited on the note, her heirs are the proper parties to have their interests in the land established. Such a suit is not an action to recover the wife's interest in personal chattels or for damages for a conversion of choses in action, but a bill to declare a resulting trust.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz*, Judge.

REVERSED AND REMANDED.

*Alex. J. B. Garesche, Jones, Jones & Hocker,* and *A. H. Roudebush* for appellants.

(1)  Personal savings and profits made by the wife in her domestic management, which her husband allows her to apply to her own separate use, will be held to vest in her against the claim of the husband. Gentry v. McReynolds, 12 Mo. 533; Welch v. Welch, 63 Mo. 60; McCoy v. Hyatt, 80 Mo. 135; Thomas v. Thomas, 107 Mo. 462; 2 Story's Eq. Jur., sec. 1375; Ingalls v. Ferguson, 59 Mo. App. 308; s. c., 138 Mo. 365; Stanning v. Style, 3 Peere Williams 337; 2 Roper, Husb. and Wife, 137; Mangey v. Hungerford, 2 Eq. Cases Abr. 156. (2)  A resulting trust arises in favor of one whose money is used by another in the purchase of land when the conveyance is taken to himself instead of to, or for, the person who furnishes the money. If Mary Ann Johnston's money, to the extent of $1,800, went into the property, then a resulting trust in favor of Mary Ann Johnston and her heirs arose *pro tanto*. Key v. Jennings, 66 Mo. 366; Baumgartner v. Guessfield, 38 Mo. 36; Johnson v. Quarles, 46 Mo. 426; Shoemaker v. Smith, 11 Humph. 8; Kelley v. Johnson, 28 Mo. 249; 1 Perry on Trusts, sec. 132; 1 Beach on Trusts, sec. 152.

(3)   Where the husband purchases property with the separate means of his wife but takes the title in his own name, he is regarded in equity as trustee for his wife. Broughton v. Brand, 94 Mo. 169; Scrutchfield v. Sauter, 119 Mo. 615; Seay v. Hesse, 123 Mo. 450; DeBancey v. Wheeler, 128 Mo. 84; Clowser v. Howland, 34 S. W. 64; Alkire Grocer Co. v. Ballerger, 137 Mo. 369; Hardware Co. v. Horn, 146 Mo. 134.   (4)   Where the joint funds of husband and wife are invested in property (whether real or personal) the title to which is taken in their joint names, a trust results in favor of the wife to the extent that her funds contributed to the purchase.   Because the investment is joint no estate by the entirety can result whether the funds are invested in either realty or personalty.   Estates by the entirety never obtained as to personalty.   The $4,006 note in which the funds of Daniel Johnston and his wife Mary Ann Johnston went, was personalty.   Price v. Kane, 112 Mo. 415; Jones v. Elkins, 143 Mo. 647; Curd v. Brown, 148 Mo. 92; State ex rel. v. Brady, 53 Mo. App. 205; Wilcox v. Murtha, 58 N. Y. Supp. 784; In re Albrecht, 18 L. R. A. 331; s. c., 136 N. Y. 91; Schouler on Dom. Rel., 111, 113; Petty v. Styward, 1 Rep. on Ch. Slar. 57; s. c., 1 Eq. Cases Ab. 290; Williams on Personal Property, 3; Dwight on Personal Property, pp. 457, 458; Schouler on Personal Property, p. 195; 4 Kent Com. (14 Ed.), 361; Smith on Personal Property, 33.   (5)   All the testimony of Daniel Johnston regarding the interest of his deceased wife in the deed of trust and notes secured thereby was incompetent and should have been excluded because, by reason of section 4652, Revised Statutes 1899, it discloses, or seeks to disclose, transactions between himself and a party since dead.   Wood v. Matthews, 73 Mo. 477; Julian v. Calkins, 85 Mo. 202; Chapman v. Dougherty, 87 Mo. 619; Gunn v. Thurston, 130 Mo. 344; Lewis v. Weisenham, 1 Mo. App. 222; Kellogg v. Malin, 62 Mo. 429; Banking House v. Reed, 132 Mo. 256; Johnson v. Quarles, 46 Mo. 429; Angell v. Hester, 64 Mo.

144; Meier v. Thieman, 90 Mo. 433; Lins v. Lenhardt, 127 Mo. 290. (6) The right to enforce this trust exists in the heirs of Mary Ann Johnston. It was not necessary that the suit be brought by the executor. Broughton v. Brand, 94 Mo. 169; Seay v. Hesse, 123 Mo. 456; Hart v. Leete, 104 Mo. 335; Ford v. Hennessey, 70 Mo. 581; Richardson v. Cole, 160 Mo. 377. But if a defect as to parties plaintiff existed, it was waived by failure to raise the point by demurrer or answer. Rogers v. Tucker, 94 Mo. 346; Bank v. Davis, 105 Mo. 107; Y. M. C. A. Ass'n v. Debach, 82 Mo. 475; Gregory v. McCormack, 120 Mo. 657; Scott-Force v. Hombs, 127 Mo. 392; Graham v. Allison, 24 Mo. App. 516; Rothschild v. Lynch, 76 Mo. App. 339; State ex rel. v. Hunt, 46 Mo. App. 617; Galbreath v. Newton, 45 Mo. App. 312; Loan & Trust Co. v. Brown, 59 Mo. App. 461; State ex rel. v. Sappington, 68 Mo. 457; Butler v. Lawson, 72 Mo. 247; Planing Mill v. Church, 54 Mo. 524.

*Daniel Dillon* and *John Dillon* for respondents Daniel and Mary Johnston.

(1) On the death of his wife, Mary Ann Johnston, in 1885, the note for $4,006.08, in controversy, became the property of Daniel Johnston alone, regardless of who furnished the consideration for the giving of the note, or what the consideration was. A note payable to husband and wife, on the death of either, belongs to the survivor. Shields v. Stillman, 48 Mo. 82; Wells v. Moore, 68 Mo. App. 501; Arn v. Arn, 81 Mo. App. 136; Fiedler v. Howard, 99 Wis. 388; Farr v. Trustees, etc., 83 Wis. 446; Abshire v. State ex rel., 53 Ind. 64; Bramberry's Estate, 156 Pa. 632; Gillan's Ex. v. Dixon, 65 Pa. 398; Allen v. Tate, 58 Miss. 585; Pendler v. Dickens, 27 Miss. 255; Sanford v. Sanford, 45 N. Y. 726; Asylum v. Strain, 2 Bradford 34; Draper v. Jackson, 16 Mass. 478; Pike v. Collins, 33 Me. 43; 2 Daniel on Neg. Ins. (4 Ed.), p. 221, sec. 1184; Freeman on Co-tenancy and

Par. (2 Ed.), p. 133, sec. 68; Schouler on Husband and Wife, sec. 399; Schouler on Domestic Relations (5 Ed.), p. 299, sec. 193; Schouler, Per. Prop. (3 Ed.), pp. 191-2, sec. 156; 2 Kent's Com. (14 Ed.), star page 351, bottom page 552; Williams, Per. Prop. (4 Am. Ed.), star pages 302-3; 1 Wait, Actions and Defenses, p. 76, sec. 8; 1 Beach, Mod. Law of Contr., sec. 668, p. 809. (2) Even if Mary Ann Johnston contributed of her own money $1,800 to make up the $4,006.08 for which the note was given, and even if Daniel Johnston, on the death of his wife, Mary Ann Johnston, did not become the sole owner of the note, still, these plaintiffs have no cause of action, and there is no cause of action stated in their petition. The note was personal property, and, on the death of Mary Ann Johnston, her interest therein would go to her administrator and not to her heirs. There has been no administrator of her estate appointed, but one may be appointed at any time, and he would have the right to hold Daniel Johnston accountable for the interest of Mary Ann Johnston in this note, or hold the trustee who sold the property for $5,000 and delivered the deed without receiving in cash the part belonging to the administrator of Mary Ann Johnston, and holding the same till such an administrator should be appointed and authorized to receive it. State to use v. Fulton, 35 Mo. 323; Hannenkamp's Admr. v. Borgmeier, 32 Mo. 569; State ex rel. v. Moore, 18 Mo. App. 406; Becroft v. Lewis, 41 Mo. App. 552; Green v. Tittman, 124 Mo. 316;

*Henry S. Caulfield* for respondent, Lincoln Trust Company.

(1) When Daniel Johnston and his wife made the loan from the Lincoln Trust Company and gave the deed of trust securing same, he was in possession and had the legal title to the property. Schanewerk v. Hoberecht, 117 Mo. 22; Hume v. Hopkins, 140 Mo. 65. (2) The Lincoln Trust Company and the trustee in the deed

of trust securing its loan had a right to rely on the recorded title, and took from Daniel Johnston such title free of any equities of which they had no notice. Hume v. Hopkins, 140 Mo. 65. (3) The recitals in the sheriff's deed to Elizabeth Robeson were binding upon both the beneficiaries in the Ann Fury deed of trust in favor of an innocent purchaser without notice, even though such recitals were untrue. Bldg. and Inv. Co. v. Dunsworth, 146 Mo. 361. (4) Equity will not sanction compelling the Lincoln Trust Company to resort for the enforcement of its debts first to the undivided interest conceded to be in Daniel Johnston, and preventing its resorting to the interest claimed by plaintiffs except for the deficiency. Coker v. Shropshire, 59 Ala. 542; Ins. Co. v. Ins. Co., 10 Mo. 517; Farwell v. Bigelow, 112 Mich. 285; Rogers v. Holyoke, 14 Minn. 220; Sibley v. Baker, 23 Mich. 315.

MARSHALL, J.—This is a bill in equity, the purpose of which is to establish a resulting trust in favor of the plaintiffs, in lots 13 to 16 inclusive, in city block 968, in the city of St. Louis, having an aggregate front, on the south line of Stoddard street, of 110 feet. The circuit court dismissed the bill and the plaintiffs appealed.

The undisputed facts in this case are as follows:

The plaintiffs are the children (and their husbands) of the defendant, Daniel Johnston, and his former wife, Mary Ann Johnston, nee Fury. The defendants are, the said Daniel Johnston, and his third wife, Mary Ann Theresa Johnston, nee Gheraty, and the Lincoln Trust Company. The defendant Daniel Johnston's first wife was a sister of his second wife, the plaintiffs' mother. The latter was a widow when Johnston married her, in 1873. She died in 1885, intestate, leaving the plaintiffs as her only heirs. No administration was ever had upon her estate and none was necessary, as it appears that she owed no debts.

Prior to and on December 12, 1881, Ann Fury, the mother of Daniel Johnston's second wife, Mary Ann, and the plaintiff's grandmother, owned the land in question as her separate property. Prior thereto, to-wit, between July 27, 1877, and on that date, Daniel Johnston loaned his mother-in-law, Ann Fury, or her husband, Michael Fury, $2,206.08. His wife, Mary Ann Johnston, had also turned over to her father or mother, $1,800. Michael Fury then died and Ann Fury was on December 12, 1881, a widow. On that date Daniel Johnston presented to his mother-in-law, Ann Fury, an itemized statement of the amount he had loaned or advanced to Michael Fury and Ann Fury, and what he claimed was due him as rent, amounting to $2,206.08. To this statement was appended at the end thereof the following:

"Add money advanced to Ann Fury by Mary Ann Johnston, $1,800.

"Total amount due by Ann Fury to Daniel Johnston and Mary Ann Johnston as per above statement on January 1, 1882, $4,006.08.

"For which amount said Ann Fury has given her note dated January 1, 1882, secured by deed of trust of date December 12, 1881."

This was signed and sealed by Daniel Johnston and Mary Ann Johnston.

The note was payable to Daniel Johnston and Mary Ann Johnston, and the deed of trust securing the note described them as beneficiaries. The note was payable at two years, and there were also semiannual interest notes.

At the time this settlement was had and this note and deed of trust were executed, there was a prior mortgage on the land for five thousand dollars. Thus the matter stood when Mary Ann Johnston died in 1885. Daniel Johnston married his present wife in October, 1886. In August, 1893, the trustee under the deed of

trust of December 12, 1881, being alleged to have removed from the State, Daniel Johnston procured the sheriff of St. Louis to be substituted as trustee, and caused him to foreclose the deed of trust, and at the sale Elizabeth Robeson, acting for Daniel Johnston and not for herself, purchased the property, and immediately deeded it to him. The bid was for five thousand dollars, but Johnston paid the sheriff only $85 cash, and had the balance of the bid credited upon the note of Ann Fury to himself and his deceased wife.

During the years 1884, 1885 and 1886 (which was partly before and partly after the death of Mary Ann Johnston) Daniel Johnston paid off the first deed of trust on the land, paying for that purpose, it is charged, $7,350. He also paid the taxes on the land and other expenses incident thereto, and on the other hand has received the rents. On May 23, 1899, Daniel Johnston borrowed $7,020 from the Lincoln Trust Company, and secured it by a deed of trust on the land. He tore down the house or houses that were on the land and with the money borrowed from the trust company, and perhaps other money of his own, and as he alleges with three thousand dollars of his present wife's money, he put up new buildings on the land. This suit was begun to the February term, 1900, of the St. Louis Circuit Court.

The only disputed fact in the case is whether the $1,800, aforesaid, was the money of Mrs. Mary Ann Johnston or of Daniel Johnston. He claims and testified that she never had any money, and his witnesses testified that they never heard of any property or money belonging to her. He testified upon the trial of this case that he "fetched home money to give to her father so he could pay the mechanics as the cellar would be built, and as the joists were put on, and different payments to them, so she could have it to hand to him," and that it was his money, and that he only placed it in her custody to be handed by her to her father, "for the purpose

of paying for a house that her father was putting up on the land in question, which belonged to his wife, Ann Fury.''

On the other hand the plaintiffs introduced a transcript of the evidence thereby preserved in the case of Fredericka Schmidt et al. v. Daniel Johnston, from which it appeared that he testified that his former wife, Mary Ann Johnston, advanced $1,800 of the $4,006.08 covered by the note and deed of trust of Ann Fury, dated December 12, 1881; that he could not say exactly when she advanced it; that she told him the amounts she gave and he lumped it all together and added it to his itemized account; that ''she saved most of the money from housekeeping and such as that;'' that she had no money except what she saved. And when his attention was called to the fact that in 1877 he himself was in the market as a borrower and he was asked to reconcile that fact with his claim of having loaned his father-in-law four thousand dollars, he answered as follows: ''A. There was a large portion of that she had saved previous to that, housekeeping money. Q. She would not let you use it and preferred to have you borrow the money from Mr. Schmidt or your father-in-law? A. She had an idea of having some money saved up for cash money herself and when her father wanted to build she gave it to him.''

This admission, together with the physical facts in the case, constitute the evidence upon which the plaintiffs rely to prove that the $1,800 was their mother's money, and that such money had gone into the land, by reason of the purchase by the defendant of the land at the trustee's sale, and the crediting of the bid upon the note, and therefore they claim a resulting trust of nine-twentieths in the land.

## I.

The primary question presented by this record is, whether the eighteen hundred dollars was the money of Daniel Johnston or of his wife, Mary Ann Johnston. If it was his, that is an end of this case. If it was hers, the foundation is laid for the plaintiffs' claim, and then other questions raised in the case must be passed upon.

The defendant's contention that the money was his, rests upon his testimony in this case, that he "fetched" the money home and placed it in his wife's custody, to be by her turned over to her father to be used by him in paying for the building of a house upon the land involved in this case, which belonged to Ann Fury. He supplements his testimony with the testimony of others to the effect that his wife never had any money or property, or at any rate that they never heard of her having any and they were intimate with her and her family affairs. On the contrary, the plaintiffs produced the testimony of Daniel Johnston himself, given in the case of Schmidt against him, a short time after the note and deed of trust were executed, wherein he swore that this $1,800 was his wife's money, which she had saved "from housekeeping and such as that." And when his attention was called to the fact that in 1877 he was a borrower and he was asked how that could be if his wife had any money saved "from housekeeping and such as that," he replied that she would not let him have it because "she had an idea of having some money saved up for cash money herself, and when her father wanted to build she gave it to him."

So that so far as the direct testimony is concerned it all rests upon what Daniel Johnston himself said about it. His first statement was made shortly after the transaction occurred, and was also made in the trial of a case wherein it was charged that the money was his and not his wife's. His last testimony was made in the trial of this case. It may be said that both statements were

in one sense statements in his own interest, but in another sense his first statement also contains some of the elements of a statement or admission against interest, and it is therefore prima facie true. But if these statements offset each other, which is the utmost the defendants could possibly claim, then the case is left with only the statements of the defendant's witnesses, above set out, to the effect that although intimate with Mrs. Johnston and her family affairs, they never knew or heard of her having any property or money, supporting the defendant's claim, while on the other hand are the physical facts in the case, which all support the plaintiffs' contention.

Those physical facts are these: first, the itemized statement of account made by the defendant Johnston himself, upon which the settlement was made with Mrs. Ann Fury, and for the payment of which the deed of trust and note were executed, which distinctly recites the fact to be that the $1,800 was "money advanced to Ann Fury by Mary Ann Johnston." Not money placed in Mrs. Johnston's custody by Daniel Johnston to be by her turned over to her father, as he now claims, but "money advanced to Ann Fury by Mary Ann Johnston." This statement is signed and sealed by both Daniel Johnston and Mary Ann Johnston. It was made by him when his wife and her mother, Ann Fury, were alive, and knew whose money it was, and is of much more probative force than his self-serving statement made upon the trial of this cause, after his wife and Ann Fury were dead and therefore unable to contradict him or to tell their side of the transaction. Second. The next physical fact is that the note and deed of trust were made payable to Daniel Johnston and Mary Ann Johnston, his wife. The defendant tries to parry the effect of this fact by contending that he intended to create an estate or interest by the entirety, with the correlative right of survivorship, in the longest liver, and thus to make provision for his wife if he predeceased her, and

on the other hand to preserve it all for himself if he survived her. If the eighteen hundred dollars was his money it would have been most praiseworthy for him to make such a provision for his wife, and it would have been a legal and valid arrangement. [Case v. Espenschied, 169 Mo. 1. c. 219.] But the trouble is that the major premise of his syllogism is disputed and is the very essential and vital point in this case, and no conclusion or deduction can properly or logically be drawn from such controverted premises, nor can the rule of law involved in the conclusion afford any evidence of the existence of the disputed premises. The effect of making the note and deed of trust payable to both, if the $1,800 was the wife's money, will be discussed hereinafter, for if it was her money and not his, the construction he puts upon this physical fact necessarily fails. Without such a construction this physical fact, read in the light thrown upon it by the settlement and receipt aforesaid, tends strongly to support the plaintiff's contention that the $1,800 was the wife's money, and also tends to indicate that, instead of each taking security for the amount each had advanced, they took the one note and deed of trust payable to the two, for the aggregate amount of their advances, and without any idea of creating a right by the entirety, with its accompanying incident of suvivorship. Third. The next physical fact is that as long as his wife lived, which was for more than four years after the note and deed of trust were made, and was for about two years after the maturity thereof, he never foreclosed the deed of trust, or set up any claim of a right by survivorship. If the deed of trust had been foreclosed during the life of his wife, there could be no possible right of survivorship. The portion of the money advanced by each would immediately have been payable to each, and the trustee would have been obliged to pay the share advanced by each to them separately. In other words, the fact that the note

was made payable in two years, is, in itself, persuasive evidence that the husband had no idea of making a provision for his wife, if she survived him, and of retaining the fund, by survivorship, if he survived her. If the idea of making provision for his wife had been present in his mind at that time, he would most likely have had the note made payable to her alone, as was the fact in Case v. Espenschied, supra.

And when the fact that the note was made payable in two years is considered in connection with the last-mentioned consideration, it seems measurably certain that he expected that he and his wife would each get back, out of the security, the amount each had advanced while they were both alive, and that by the foreclosure of the deed of trust, both being alive, all possibility of a right of survivorship would be cut off and cease.

It is not at all significant or important whether the wife saved this money out of "housekeeping and such as that," or whether the husband gave it to her in lump. No rights of his creditors are involved here, and therefore as between them or their privies in blood or estate, the gift by him to her made it as much her separate estate under the Married Woman's Act of 1875, as if she had received it as a gift from any stranger or had inherited it. [Bettes v. Magoon, 85 Mo. 580; Clark v. Clark, 86 Mo. l. c. 123; Thomas v. Thomas, 107 Mo. 463; Sanguinett v. Webster, 127 Mo. l. c. 38.]

The physical facts, the records and statements of the husband and wife and of Ann Fury made when the settlement was had and the deed of trust and note were executed, and the conduct of the defendant since then, and especially in not foreclosing the deed of trust during his wife's life, even without taking into account at all the admissions of the defendant, point surely and convincingly to the conclusion that the $1,800 was the wife's money and not the defendant's.

## II.

The next question in this case is whether a right of survivorship exists in personal property.

The defendant Johnston contends that the weight of authority is that such a right may be created and will be enforced, and in support of the contention he cites a great number of cases, of which Allen v. Tate, 58 Miss. 585; Draper v. Jackson, 16 Mass. 479; Abshire v. Wilson, 53 Ind. 64, are fair types. He also refers to Schouler's Personal Property (3 Ed.), sec. 156, and Freeman on Co.-Ten. and Par. (2 Ed.), sec. 68.

On the other hand, the plaintiffs claim that while at common law estates by the entirety existed, with the incident of survivorship, still, as between husband and wife, there could be no estate by the entirety in personal property, because the wife's personal property became the property of the husband immediately upon his reducing it to possession. The plaintiffs also claim that the cases cited and relied on by the defendant Johnston are not applicable to this case, because they were all cases where one party, either the husband or the wife, had advanced the whole consideration for the security or note which was made payable to both the husband and wife, and that as in cases of the purchase of land by the two, each furnishing their own funds for their part, and the title being taken in the names of both, so as to securities or notes, where each advanced a part of the consideration and the note was taken in their joint names, a tenancy in common and not a joint tenancy or right by the entirety will arise, and a court of equity will protect and decree the interest of each. In support of these contentions the plaintiffs cite many cases, among them Wilcox v. Murtha, 58 N. Y. Supp. l. c. 784; In re Albrecht, 18 L. R. A. l. c. 331; Wait v. Bovee, 35 Mich. 425. The defendant Johnston, however, calls attention to the note to the case of In re Albrecht, in 18 L. R. A. p. 329, wherein it is said: "The above case

does not seem to have any direct precedent other than that cited in the opinion.'' And in the opinion the court says no reported case has been found in that State where the same question was presented, but refers to Wait v. Bovee, 35 Mich. 425, as authority. Therefore, the defendant Johnston questions the correctness of those cases, and claims they do not harmonize with the weight of authority.

The questions of law thus presented are not only interesting from a historical or philosophical point of view, but are most serious from a practical point of view, and a review of the law upon this subject is not only proper but necessary.

Speaking of joint tenants and the doctrine of survivorship, with respect to personal chattels as well as real estate, Chancellor Kent says: ''The doctrine of survivorship, or *jus accrescendi,* is the distinguishing incident of title by joint tenancy; and, therefore, at common law, the entire tenancy or estate, upon the death of any of the joint tenants, went to the survivors, and so on to the last survivor, who took an estate of inheritance. The whole estate or interest held in joint tenancy, whether it was an estate in fee, or for life, or for years, or was a personal chattel, passed to the last survivor, and vested in him absolutely. It passed to him free, and exempt from all charges made by the deceased co-tenant. The consequence of this doctrine is, that a joint tenant can not devise his interest in the land; for the devise does not take effect until after the death of the devisor; and the claim of the surviving tenant arises in the same instant with that of the devisee, and is preferred. If a joint tenant makes a will, and he then becomes solely seized by survivorship, the will does not operate upon the title so acquired without the solemnity of republication. The same instantaneous transit of the estate to the survivor, bars all claim of dower on behalf of the widow of the deceased joint tenant. But the

charges made by a joint tenant, and judgments against him, will bind his assignee, and him as survivor.

"The common law favored title by joint tenancy, by reason of this very right of survivorship. Its policy was averse to the division of tenures, because it tended to multiply the feudal services, and weaken the efficacy of that connection. But in Hawes v. Hawes, Lord HARD-WICKE observed, that the reason of that policy had ceased with the abolition of tenures; and he thought, that even the courts of law were no longer inclined to favor them; and at any rate, they were not favored in equity, for they were a kind of estates that made no provision for posterity. As an instance of the equity view of the sub-ject, we find that the rule of survivorship is not applied to the case of money loaned by two or more creditors on a joint mortgage. The right of survivorship is also rejected in all cases of partnerships, for it would oper-ate very unjustly in such cases. In this country, the title by joint tenancy is very much reduced in extent, and the incident of survivorship is still more extensively destroyed, except where it is proper and necessary, as in the case of titles held by trustees.

"In New York, as early as 1786, estates in joint ten-ancy were abolished, except in executors, and other trus-tees, unless the estate was expressly declared, in the deed or will creating it, to pass in joint tenancy. The New York Revised Statutes have re-enacted the pro-vision, and with the further declaration, that every es-tate vested in executors or trustees, as such, shall be held in joint tenancy. The doctrine of survivorship in-cident to joint tenancy (excepting I presume, estates held in trust), is abolished, in the States of Connecticut, Pennsylvania, Virginia, Kentucky, Indiana, Missouri, Mississippi, Tennessee, North Carolina, and Alabama. In the States of Maine, New Hampshire, Massachusetts, Rhode Island, Vermont, New Jersey, Michigan, Illi-nois, and Delaware, joint tenancy is placed under the same restrictions as in New York; and it can not be

created but by express words; and, when lawfully created, it is presumed that the common-law incidents belonging to that tenancy follow. The English law of joint tenancy does not exist at all in Ohio and Louisiana, and it exists in full force in Georgia, Mississippi, and Maryland.

"The destruction of joint tenancies, to the extent which has been stated, does not apply to conveyances to husband and wife, which, in legal construction, by reason of the unity of husband and wife, are not strictly joint tenancies, but conveyances to one person. They can not take by moieties, but they are both seised of the entirety, and the survivor takes the whole; and, during their joint lives, neither of them can alien so as to bind the other. If the husband be attainted, his attainder does not affect the right of the wife, if she survive him; nor is such an estate, so held by the husband and wife, affected by the statutes of partition. If an estate be conveyed expressly in joint tenancy, to a husband and wife, and to a stranger, the latter takes a moiety, and the husband and wife, as one person, the other moiety. But if the husband and wife had been seised of the lands as joint tenants before their marriage, they would continue joint tenants afterwards, as to that land, and the consequences of joint tenancy, such as severance, partition, and the *jus accrescendi,* would apply. It is said, however, to be now understood, that husband and wife may, by express words, be made tenants in common by a gift to them during coverture.

"Joint tenancy may be destroyed by destroying any of its constituent unities except that of time." [4 Kent's Comm. (14 Ed.),*360, et seq.]

Schouler's Personal Property (3 Ed.), vol. 1, sec. 156, p. 191, et seq., thus treats the subject:

"As there can be no 'estate' in personal property, many of those technical distinctions which are made in the books between joint estates for life, in tail, or in fee, have no application to our present subject. But any

interest which may be lawfully created in chattels, whether immediate or expectant, is itself susceptible of joint as well as sole ownership; and, as we take occasion to show the reader elsewhere, personal property may be limited in modern times to very much the same effect as lands, notwithstanding the natural and technical differences between them.

"Household furniture, merchandise, animals, and other movables of a corporeal character, may therefore be so vested in two or more persons as to constitute them joint owners thereof. There may likewise be joint owners of a promissory note; of a patent-right; of a legacy; of stock; of an insurance policy; of a bank deposit; and, in short, of any chattel, whether of a corporeal or incorporeal nature, whether in the nature of a chose in possession or of a chose in action; so long indeed as that chattel can be the subject of ownership at all, unless special reason to the contrary exists. Nor does the principle apply only to chattels personal; for chattels real, such as a lease for years, may be owned by two or more jointly.

"It is the fundamental principle of a joint tenancy, that while the parties constitute but one person, so to speak, as far as the rest of the world is concerned, with regard to themselves each is entitled to an equal share of the rents, income, and profits, so long as he lives; and when one dies, the survivor takes the entire interest, to the complete exclusion of the heirs or personal representatives of the party deceased. This right of survivorship is the great clog upon property vested in joint owners as distinguished from those who own in common; for it seems very unreasonable on the face of it, that while both are equally owners, the longest liver should have the whole. And the modern policy of the law, strengthened and enforced by numerous local statutes, is to regard property which has been given or sold, granted or devised, to two or more persons without words indicating how it shall be held, as a tenancy or

ownership in common rather than a joint tenancy or ownership. And an exception which has long been made in favor of trade or agriculture is to regard the implements and stock used in any joint undertaking of this sort as exempted from the rule of survivorship; though here the modern principles to be applied are those peculiar to the law of partnership, which we shall examine hereafter.

"But it must be conceded that the policy of discouraging survivorship has been applied in practice more directly to lands than chattels; and this we have no doubt is mainly for the reason that a strict joint ownership (not a partnership) in chattels is seldom created so as to occasion hardship or last any considerable length of time, except it be by will. The construction of wills involves chiefly the question of testamentary intent; and bequests and legacies, dependent upon the contingency of one or another's death, are by no means unusual in various other connections. The doctrine of survivorship might apply well enough, then, to gifts of this sort, if so the testator intended it, though intolerable when enforced where two persons had bought and paid for goods and chattels together, and thus jointly acquired a title by purchase. Subject to the exceptions made in favor of trade and agriculture, the rule has, it is true, been laid down, that if personal property, whether of a corporeal or incorporeal character, be given to A. and B. simply, without the use of other words, they will be joint owners, having equal rights as between themselves during the joint ownership, and being with respect to third persons but a single individual in the legal sense. Whether, however, this would amount to a presumption in favor of survivorship, as against a quasi partnership in the property, the decided cases leave it rather difficult to determine; and the more so from the circumstance that the term 'joint ownership' is frequently used in an indefinite sense, so far as personal property is concerned—as it certainly

ought not to be—consequently embracing both the technical joint ownership and the ownership in common. The modern rule of equity is certainly to defeat a joint tenancy wherever it is possible; and in this country the incident of survivorship is destroyed by statute almost entirely, except in the case of legacies or devises, and where persons are appointed co-executors or co-trustees or co-guardian, or when one expressly creates the incident.''

Dwight's Law of Persons and Personal Property, p. 458, after speaking of the general rule as to joint tenancy, says: ''In creating a joint interest, it is a rule of construction that a grant of a chattel to two or more makes them joint tenants, rather than tenants in common. This rule is modified by the principles of equity jurisprudence, where each of the parties advances a part of the consideration to purchase the chattel. In this case, there is a tenancy in common.''

Smith on Personal Property, sec. 26, p. 33, says:

''The operation of survivorship in diverting the interest of a deceased owner from his next of kin, to whom it naturally belongs, is generally regarded as unreasonable and unjust, and hence is not favored by courts or legislatures. Numerous statutes have been passed providing in effect, that where property is given or sold, granted or devised, to two or more persons without words expressly or by necessary implication creating a joint tenancy or ownership, it shall be held to constitute a tenancy or ownership in common, rather than a joint tenancy or ownership. And, in the absence of legislation on the subject, courts generally incline to a construction of instruments that will establish a tenancy or ownership in common, in preference to a joint tenancy or ownership.

''But the doctrine of survivorship is well adapted to executors, administrators, trustees, and others, acting in a fiduciary capacity, who have the legal title, but

no equitable interest in the property; and hence they are generally held and treated as joint owners.

Williams on Personal Property (4 Ed.), marg. page 306, says:

"Indeed, as a general rule, joint ownership is not favored in equity, on account of the right of survivorship which attaches to it. If, therefore, two persons advance money by way of mortgage or otherwise, and take the security to themselves jointly, and one of them die, the survivor will be a trustee in equity for the representatives of the deceased, of the share advanced by him. And where the intention is that the survivor should receive the whole, a declaration should be inserted that his receipt alone shall be a sufficient discharge for the money secured."

The author cites in support of the text the case of Petty v. Styward, 1 Ch. Rep. 57; 21 Eng. Ch. Rep. (Full Reprint), p. 506. This is peculiarly applicable to the case at bar, for the facts are similar.

The report of this case is as follows:

"That the defendant Nicholas Styward, and one Simeon Styward (whose executor the plaintiff is) lent £2,500 to Sir Thomas Glenham, £1,450 of the said money being the proper money of the said Simeon, and £550 residue was the defendant's money, and for security the said Sir Thomas Glenham mortgaged lands to the said Simeon afterwards, and the defendant Styward and their heirs, redeemable at a day prefix'd upon payment of £2,630, that the said Simeon before the day of redemption made his will and disposed of the said £550, and therein recited that the £1,450 was delivered by him to the said defendant his father, which appeared by a note under both their hands; and that if the said lands should be redeemed by payment of the said £2,500 with interest, then the said £1,450 with its interest should be delivered into the plaintiff's hands for the uses in the said will, the very day of redemption the said lands were redeemed, and the whole money and interest paid unto

the defendant, which the said defendant claimeth by survivorship.

"This court is clear of opinion, that by equity in a case of this nature there ought to be no survivorship, in respect the same was but a mortgage, and the money was repaid at the day, and the note under both the said parties' hands, and the will of the said Simeon sheweth plainly a trust each in the other, and an intention, that if the money was repaid, either of them should have his money again with interest, and decreed the defendant to pay to the plaintiff the £1,450 and interest so by him received."

The rule thus laid down in Williams on Personal Property, is quoted and adopted in Darlington on Personal Property, pp. 305, 306. See, also, Minor's Institutes, vol. 3, part 1, p. 31.

Thus it appears that at common law joint tenancies, with the incident of survivorship, obtained as to both real and personal property, but that in a majority of the States of the Union joint tenancies have been abolished by statute absolutely or the estate declared to be a tenancy in common, unless expressly declared in the grant or devise to be a joint tenancy. The latter is the statute law in Missouri as to real estate (R. S. 1899, sec. 4600), except as to conveyances to executors, trustees or husband and wife. Construing this statute, this court, per BLACK, J., in Rodney v. Landau, 104 Mo. l. c. 259, said: "The policy of the American law is opposed to survivorship, and that policy is clearly indicated in our statutes. While joint tenancies are not abolished in this State, still, to create such a tenancy, there must be an express declaration to that effect in the deed or will creating the estate."

It will be observed that under our statute executors and trustees and husband and wife are excepted from the requirement of the statute that the joint tenancy shall be expressly declared in the grant. The statute

Vol. 173 mo—8

has been in this form since 1835, except as to husband and wife, and it was amended in 1865 so as to except husband and wife. [Russell v. Russell, 122 Mo. l. c. 237; Lemmons v. Reynolds, 170 Mo. 227.]

In Hall v. Stephens, 65 Mo. 670, it was held that the interest of a husband in land by the entirety could be sold under execution, but that his wife, surviving him, would take the entire estate. And in Russell v. Russell, 122 Mo. l. c. 237, it was held that "owing to this legal unity of husband and wife, it is said to be impossible, even by express words, to convey land to them so as to make them tenants in common with each other." But it will be observed that the effect of the Married Woman's Acts of 1875, 1883, and 1889, were not considered in that case, probably because the conveyance then undergoing adjudication was made before the passage of those acts.

In Bains v. Bullock, 129 Mo. 117, the grant was made after the passage of the Married Woman's Acts, and the court held that "the statute abolishes the legal unity between the husband and wife, which gave rise to estates by the entirety, but the estate itself has not been abolished." Perhaps a more accurate statement would be that since the passage of the Married Woman's Act a husband and wife must be held to have the same right to hold a joint estate, an estate by the entirety, with the incident of survivorship, that any other persons have, but that under section 4600, Revised Statutes 1899, a grant to the husband and wife need not be expressly declared to be a joint tenancy.

The sum of the matter, therefore, is that estates by the entirety may be created in Missouri, in personal as well as in real property, and between husband and wife as well as between strangers, but that as to real property a grant or devise to two or more persons will be held to be a tenancy in common, unless by the terms of the grant or devise it is expressly declared to be a joint tenancy, except as to grants or devises to executors, trustees or husband and wife, which are excepted

from the operation of the statute, and that as to personal property the common law has not been changed by statute, except by the Married Woman's Acts which have placed a husband and wife on the same footing in this regard as any other persons.   That is, the husband's common-law right to the wife's personal property and choses in action is taken away, except as to such as she had, and he had a vested right to reduce to possession, before the passage of the Married Woman's Acts.   [Leete v. Bank, 115 Mo. 184; Ib., 141 Mo. 574.]

## III.

The next question arising upon this record is whether an estate by the entirety existed in this case, as to the note and deed of trust.

The premises are that Mary Ann Johnston furnished $1,800, and Daniel Johnston furnished $2,206.08, and that they took the note of Ann Fury for $4,006.08, secured by deed of trust, payable to Daniel Johnston and Mary Ann Johnston, and that both Daniel and Mary Ann signed the receipt for the note and deed of trust as a settlement of their respective claims.

In Scrutchfield v. Sauter, 119 Mo. 615; Seay v. Hesse, 123 Mo. 450; Hardware Co. v. Horn, 146 Mo. 129, it was held that if the husband invested the money of his wife, acquired by her after the passage of the Married Woman's Acts and in the manner specified in those acts, without the knowledge or written consent of the wife, in real estate, and took the title in their joint names, it did not create a joint tenancy or estate by the entirety, but that a court of equity would decree the wife a resulting trust in the land in the proportion that her money so invested bore to the total purchase price. This rule was followed in the case of McLeod v. Venable, 163 Mo. 536, and the fact that after the unauthorized investment the wife learned of the fact and refused

to join in a deed of severance of their respective interests, was held immaterial. So that notwithstanding the provisions of the statute (sec. 4600, R. S. 1899), this has now become a rule of law as well as of property in this State, so far as real estate is concerned.

The state of the law as to personal property is as follows: In Shields v. Stillman, 48 Mo. 82, it appeared that the wife owned separate real estate. She leased the land and took the rent notes payable to herself and her husband. She died, and the husband instituted a suit in his own name under the Landlord and Tenant Act before a justice of the peace, to recover the possession of the land; and to recover the rent in arrear evidenced by two of the rent notes aforesaid. The defendant insisted that the husband was not entitled to possession of the land at all, because upon the death of Mrs. Shields intestate the land immediately descended to her daughter, including the rents reserved. The husband, however, claimed that as the rent notes were made payable to him and his wife the legal effect thereof was that they were payable to him alone, and that the rents were thus appropriated to his use by his wife's appointment. The court, however, held that the appointment was not to the husband alone, but to the husband and wife jointly, and, hence, the plaintiff's theory was untenable; but the court adopted a theory not suggested by either party and held that the taking of the notes payable to the husband and wife, made an estate by the entirety and that upon the death of the wife, the husband was entitled to the whole by right of survivorship, and accordingly held that the husband was entitled to a judgment for the notes, although he was not entitled to a judgment for the possession of the land.

It must be observed, however, that this case arose before the passage of the Married Woman's Acts, and that the wife furnished the whole consideration for the notes, and that the court did not put the decision upon the common-law right of the husband to reduce the

wife's choses in action to possession, but treated it as if they were mere strangers to each other.

Counsel for defendant also cite many cases from other jurisdictions which hold that where either of the married couple—or where any one of two persons—furnishes the consideration for a note or mortgage or personal property and makes the note or mortgage payable to both or takes the title to the property in the names of both, an estate by the entirety will thereby be created in law.   On the other hand counsel for plaintiffs, while admitting that this is the rule of law if the whole consideration is furnished by only one of the two persons, denies that such is the law where each of the two persons furnishes a part of the consideration, and in support of this contention, counsel cite Wilcox v. Murtha, 58 N. Y. Supp. l. c. 784; In re Albrecht, 18 L. R. A. l. c. 331, and Wait v. Bovee, 35 Mich. 425, where this distinction is made.

It will be noted that Petty v. Styward, 21 Eng. Ch. Repts. (Full Reprint), p. 506, lays down the same rule. Schouler's Personal Property, sec. 156, p. 192, speaking of the right of survivorship, says: "The doctrine of survivorship might apply well enough, then, to gifts of this sort, if so the testator intended it, though intolerable when enforced where two persons had bought and paid for goods and chattels together, and thus jointly acquired a title by purchase." And the same author, p. 193, says: "The modern rule of equity is certainly to defeat a joint tenancy wherever it is possible."

Dwight on the Law of Persons and Personal Property, p. 458, says: "This rule is modified by the principles of equity jurisprudence, where each of the parties advances a part of the consideration to purchase the chattel."

Williams on Personal Property (4 Ed.), marg. p. 306, says: "Indeed, as a general rule, joint membership is not favored in equity, on account of the right

of survivorship which attaches to it.   If, therefore, two
or more persons advance money by way of mortgage or
otherwise, and take the security to themselves jointly,
and one of them die, the survivor will be a trustee in
equity for the representatives of the deceased, of the
share advanced by him.''

Darlington on Personal Property, p. 305, adopts.
the rule thus stated by Williams.

Therefore, outside of this State an exception to the
general rule of the right of survivorship has grown up,
in equity, where each of the two persons furnishes a part
of the money with which the personal chattel is pur-
chased, or which makes up the note or mortgage.

In Missouri, since the passage of the Married Wom-
an's Acts, it has been uniformly held that if a husband
invests any of his wife's separate money, acquired by
her after said acts took effect and in the manner therein
specified, together with money of his own in real estate
in their joint names, without her express written con-
sent so to do, it will not create an estate by the entirety,
but the wife will, by a court of equity, be decreed a re-
sulting trust in the land to the extent represented by her
money.

In Winn v. Riley, 151 Mo. 61, it was held that if the
husband takes his wife's money, arising as aforesaid,
and uses it in his business, his wife could treat him as
her debtor or as her trustee as she chooses.

In all of these later cases, except Winn v. Riley,
the investment of the wife's separate money, with other
money of the husband, was in real estate, while here it
was in personal property.  But this is an immaterial
difference.   For at common law there was no difference
between the right of survivorship as to real property
or as to personal chattels.   And as hereinbefore shown,
section 4600, Revised Statutes 1899, excepts grants to
husband and wife, 'and leaves the rule as to them as it
was at common law, so far as real estate is concerned,
and the Married Woman's Acts have abolished the com-

mon law unity of the husband and wife and placed married women, as to their separate personal, as well as their real, property, on the same footing towards their husbands, as any other persons occupy towards each other.

The result is that not only in the other jurisdictions referred to, and according to the text-writers quoted from, but also by the more recent decisions of this court, an estate by the entirety does not arise, nor does the right of survivorship exist, as to real estate where the land is purchased by the husband without the wife's express written consent, partly with the money of the husband, but the wife will be decreed a resulting trust in the land, by a court of equity in the proportion that her money bears to the total purchase price of the land.

There is no good reason why the same rule should not obtain where the wife's separate money is so invested in personal property. Under such circumstances it can not be assumed or inferred that she intended to create a right of survivorship, for she did not act at all, but it was the unauthorized act of the husband, and as he could not directly reduce her separate property to his possession or obtain title thereto without her express written consent, so he could not indirectly do so by investing it in their joint names and thus create a right by survivorship in himself.

It will be noticed that in all the cases cited the wife was ignorant of and took no part in the investment of her separate money, with her husband's money, while in the case at bar the wife knew that the note and deed of trust representing their joint investment were made payable to her husband and herself, and consented to that arrangement, and signed the written settlement upon which the note and deed of trust were based and for the payment of which they were given. This case, therefore, is in this regard, unlike any of the cases heretofore decided in this State, but falls within the except-

ion to the general rules in reference to estates by the entirety heretofore quoted from the cases decided in other jurisdictions and from the text-writers, to the effect that the right of survivorship does not obtain where each of the two persons contributes a part of the money invested, and that a court of equity will always decree to each his proportionate part of the investment. This exception as herein pointed out and as stated by Schouler's Personal Property, rests upon the principle that it would be intolerable that the doctrine of survivorship should be applied where two persons bought and paid for goods and chattels together, and thus jointly acquired a title by purchase.

The conclusion follows that under the circumstances of this case an estate by the entirety or right by survivorship was not created, but that each was entitled to their proportionate share of the note and deed of trust. It also follows that as the husband paid only eighty-five dollars in cash, and had the balance of the bid of five thousand dollars credited upon the note, the money has been thus traced into the land, and that the heirs of the wife are entitled to the same interest in the land that they had in the note and mortgage, that is, the wife is entitled to a share equal to nine-twentieths thereof and the husband to the remainder.

## IV.

Over the objection of the plaintiffs the husband was permitted to testify in his own behalf, and this is assigned as error.

Section 4652, Revised Statutes 1899, provides, "that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him."

The contract or cause of action in issue and on trial in this case was the note and deed of trust given by Ann Fury to Daniel Johnston and Mary Ann Johnston, and the rights of those two payees in the note and deed of trust, and in the land into which the money represented by the note and deed of trust had become merged by the act of Daniel Johnston. - Mrs. Johnston was dead. Consequently, under the statute, Daniel Johnston was an incompetent witness. [Curd v. Brown, 148 Mo. l. c. 95.]

The plaintiffs cross-examined him only as to matters covered by his examination in chief and therefore they have not waived their right to insist on this objection. The record does not support the claim that the plaintiffs recalled him as their witness after he had finished testifying, when called by the defendants. He was recalled to the witness stand after an adjournment of the court, but it appears that he was still on the stand undergoing cross-examination when the adjournment was had, and what took place afterwards was only a continuation of his unfinished examination.

## V.

Inasmuch as the plaintiffs waited from 1893 when the deed of trust was foreclosed until 1900, when this suit was begun, and permitted the title to stand in the name of Daniel Johnston, their rights must be subordinated to the rights of the Lincoln Trust Company, that loaned the $7,020 to him upon the faith of the whole property. But as there must be an accounting in this case between the plaintiffs and Daniel Johnston, and as in that accounting all such questions must be settled, it is unnecessary to determine the rights of the plaintiffs and Johnston as to such matters of accounting at this stage of the proceedings.

## VI.

The heirs and not the administrator are the proper parties to prosecute this action. This is a bill in equity

to declare a resulting trust in land, and not an action to recover Mrs. Johnston's interest in personal chattels or for damages for a conversion of a chose in action, and therefore the heirs and not the administrator must sue.

For these reasons the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith. All concur.